UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BENJAMIN ROBERT FUHR | § | |
| | § | |
| v. | § | CIVIL NO. 4:21-CV-549-SDJ |
| | § | |
| CITY OF SHERMAN, TEXAS | § | |

## MEMORANDUM OPINION AND ORDER

This failure-to-promote case arises from the departure of the City of Sherman's long-serving Animal Services Department Manager. The City went through a hiring process to fill the vacancy and considered several internal candidates, all of whom are white, including Plaintiff Benjamin Robert Fuhr. Ultimately, the City hired an outside candidate, who is black, to fill the Department Manager position. Fuhr then brought race-discrimination claims against the City for its failure to promote him.

Remaining before the Court is Fuhr's discrimination claim under Title VII of the Civil Rights Act of 1964. The City has filed a summary-judgment motion, (Dkt. #10), seeking dismissal of the claim and this suit. The motion will be granted. Applying the familiar *McDonnell Douglas* burden-shifting framework, the Court concludes that, while Fuhr establishes a prima facie case of discrimination, summary judgment is appropriate because the City had a non-discriminatory reason for its failure to promote Fuhr, which Fuhr has failed to rebut.

### I. BACKGROUND

The City of Sherman formerly employed Fuhr as an animal control officer in its Animal Services Department. In 2019, the manager position of the Animal

1

Services Department became vacant, and the City established a committee to interview qualified applicants for the role (hereafter referenced as the "Committee"). The Committee included Leah Campbell, the City's Human Resources and Organizational Development Administrator; Terrence Steele, the City's Assistant City Manager; and Cathy Perkins, the City's Human Resources Manager. The Committee, on behalf of the City, solicited applications and interviewed four candidates for the role: three internal candidates—Fuhr, Matt Harmon, and David Ulch, all of whom are white—and one external candidate—Ty Coleman, who is black.

As part of the interview process, the Committee asked each candidate a standard set of fifteen questions that explored, among other topics, their experience and vision for the role. Each Committee member then ranked each answer from each candidate on a scale of one to five, with five being the highest score. In addition to the questions, the Committee members assessed five criteria, including, for example, the candidate's related education or training. These criteria were similarly ranked on a scale from one to five, with five being the highest score. Each Committee member's score of each candidate was then added up, with a maximum score of 100. The three Committee members' scores were then averaged for each candidate. Coleman received an average score of 91, Fuhr and Ulch each received average scores of 82, and Harmon received an average score of 65. Based on those scores and their overall impressions of the candidates, the Committee unanimously selected Coleman for the position.

After being passed over for the promotion, Fuhr filed a charge of discrimination with the Equal Employment Opportunity Commission and an internal complaint with the City, similarly alleging racial discrimination. The City of Sherman retained a third party to investigate Fuhr's claims and ultimately concluded that "there is insufficient evidence to conclude the City discriminated against [Fuhr] in the hiring process for the Animal Services Manager." (Dkt. #16-1 at 17). Fuhr alleges that after he filed his discrimination claims, the City sought to fire him and went on to deny him two other promotions. Ultimately, the City terminated Fuhr.

Based on these allegations, Fuhr brought suit against the City of Sherman for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and Chapter 21 of the Texas Labor Code, TEX. LAB. CODE ANN. § 201.001, *et seq.*, also known as the Texas Commission on Human Rights Act ("TCHRA"). The City of Sherman moved to dismiss Fuhr's TCHRA claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6) on the ground that Fuhr failed to timely exhaust his administrative remedies because he did not timely file a charge of discrimination. The Court granted the City's motion and dismissed Fuhr's TCHRA claim. (Dkt. #9). The City now seeks summary judgment on Fuhr's only remaining discrimination claim for failure to promote under Title VII.[1]

---

[1] In its reply brief, the City raises several objections to the evidence relied upon in Fuhr's response to the summary-judgment motion. (Dkt. #17 at 1–4). Because the Court concludes that, even if this evidence is considered, summary judgment in the City's favor is still appropriate, the Court will overrule the objections as moot.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because Federal Rule of Civil Procedure 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (first emphasis omitted). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248).

Courts consider the evidence in the light most favorable to the nonmovant, but the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by providing particular facts showing that there is a genuine issue for trial. *Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*,

199 F.3d 796, 798 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

### III. DISCUSSION

A plaintiff may prove a claim of race discrimination either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). For a claim premised on circumstantial evidence, such as Fuhr's claim, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for its actions only if the employee first establishes a prima facie claim of discrimination. *McCoy*, 492 F.3d at 556–57. This framework similarly applies for reverse discrimination suits such as this one. *See Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990) (applying same *McDonnell Douglas* framework to reverse discrimination case).

The City of Sherman argues that summary judgment is appropriate on Fuhr's Title VII discrimination claim because (1) Fuhr fails to state a prima facie case of discrimination based on the City's failure to promote him to the Animal Services Department Manager role, and (2) even if Fuhr establishes a prima facie case, the City had a nondiscriminatory reason for hiring Coleman, who is black, for the position rather than promoting Fuhr, who is white, and Fuhr fails to rebut this evidence. (Dkt. #10 at 10–12). For the reasons explained below, the Court holds that while Fuhr

5

establishes a prima facie case of discrimination, summary judgment for the City is appropriate because the City had a non-discriminatory reason for not promoting Fuhr, which Fuhr fails to rebut.

**A. Prima Facie Case**

The parties dispute the proper legal standard for assessing whether Fuhr has established a prima facie case of discrimination under Title VII for failure to promote. Both parties agree that a plaintiff must demonstrate that:

> (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.

*Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013); *see also* (Dkt. #10 at 8); (Dkt. #16 at 5–6). The City, however, cites several district court opinions to argue that the fourth *Autry* element has an additional requirement— namely, that the individual selected for the position be of "equal or lesser qualifications" than the plaintiff, rather than simply the promotion of someone outside of the plaintiff's protected class. (Dkt. #10 at 8) (citing *Fuller v. Gen. Cable Indus.*, 81 F.Supp.2d 726, 729 (E.D. Tex. 2000); *Allison v. City of Fort Worth*, 60 F.Supp.2d 589, 593 (N.D. Tex. 1999); *Reno v. Metro. Transit Auth.*, 911 F.Supp. 812, 823 (S.D. Tex. 1997)).

The Court is unpersuaded that this additional requirement applies. The district court opinions that the City cites all pre-date the Fifth Circuit's decision in *Autry*, which is binding on this Court and includes no such additional requirement. *Autry*, 704 F.3d at 346–47. Indeed, in *Autry* and in other published opinions, the Fifth

6

Circuit consistently has applied the same articulated standard for discrimination claims based on a failure to promote—omitting any additional requirement that the individual selected for the position be of "equal or lesser qualifications" than the plaintiff. *See, e.g.*, *Jenkins v. La. Workforce Comm'n*, 713 F.App'x 242, 244–45 (5th Cir. 2017); *Gregory v. Town of Verona*, 574 F.App'x 525, 528 (5th Cir. 2014) (citing *Autry*, 704 F.3d at 346–47). That binding standard applies here. Accordingly, Fuhr has established a prima facie case of discrimination as (1) there is no dispute that he was not promoted to the Animal Services Department Manager role, (2) the City does not contest that he was qualified for the position, (3) Fuhr's white skin color is his protected class, and (4) a non-white individual—a black man—was given the position instead. *See* (Dkt. #10 at 11) (contesting on behalf of the City only that Coleman did not have "equal or lesser qualifications" than Fuhr).

**B. Burden Shifting**

Once a plaintiff has presented a prima facie case of discrimination, as Fuhr has done, the burden shifts to the defendant to "proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff." *Autry*, 704 F.3d at 347. If the defendant satisfies this burden, "the onus shifts back to the plaintiff to prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)." *Id.*

7

### i. City's Burden of Establishing Non-Discriminatory Rationale

Here, the City easily satisfies its burden that it had "legitimate, nondiscriminatory reasons for not promoting" Fuhr to the Animal Services Department Manager role. *Autry*, 704 F.3d at 347. It is undisputed that the City established a Committee of three City managers and administrators to evaluate each of the four candidates. (Dkt. #10-1 at 3 ¶ 6); (Dkt. #10-2 at 3 ¶ 6); (Dkt. #10-3 at 3 ¶ 6). It is also undisputed that the Committee evaluated the candidates during the interviews based on twenty questions and criteria unrelated to race. As the record shows, these questions and criteria concerned, for example, each candidate's skills and vision for the role. *See, e.g.*, (Dkt. #10-3 at 56–58). Each Committee member then independently scored the candidates based on their interview performance and responses to questions; the three evaluators' scores were then averaged for each candidate. (Dkt. #10-1 at 4–5 ¶¶ 8–9); (Dkt. #10-2 at 4–5 ¶¶ 8– 9); (Dkt. #10-3 at 4–5 ¶¶ 8–9). The record reflects that Coleman received the highest overall average score (91 out of 100) as compared to Fuhr (82 out of 100), Ulch (82 out of 100), and Harmon (65 out of 100). (Dkt. #10-1 at 4–5 ¶ 9); (Dkt. #10-2 at 4–5 ¶ 9); (Dkt. #10-3 at 4–5 ¶ 9). This evidence alone provides a legitimate, non-discriminatory reason for hiring Coleman—namely, that he received the highest score based on criteria unrelated to race.

In addition to his highest overall average score, Coleman similarly received the highest scores in the following criteria that the Committee evaluated: "job-related experience, related education or training and communication/listening skills." (Dkt. #10-1 at 4–5 ¶ 9); (Dkt. #10-2 at 4–5 ¶ 9); (Dkt. #10-3 at 4–5 ¶ 9). As evidenced

8

in their sworn declarations, the three Committee members were particularly impressed by Coleman's "approximately 8½ years of experience working in animal services, three of which [were] in a supervisory role" including his most recent position as a supervisor for the City of Dallas Animal Services, where Coleman's "duties included supervising senior animal service officers, supervising and training animal services officers, and performing yearly performance evaluations."[2] (Dkt. #10-1 at 4–5 ¶ 9); (Dkt. #10-2 at 4–5 ¶ 9); (Dkt. #10-3 at 4–5 ¶ 9).

The Committee ultimately selected Coleman for the role after "unanimously" concluding that he was "the best, most qualified candidate for the manager position" based on (1) his answers to their questions "regarding customer service, grant writing, relationships with various foundations and his goal to bring the Animal Shelter to a 98% live release rate," (2) his "innovative ideas" for the future of the role, which was "one of the main things the Committee and the City were looking for in its next Animal Services Manager," and (3) his "significant operational experience in animal services at a number of cities." (Dkt. #10-1 at 5 ¶ 10); (Dkt. #10-2 at 5 ¶ 10); (Dkt. #10-3 at 5 ¶ 10). In addition, the Committee determined that Coleman had "management/supervisory experience" and a vision for the role that the three internal candidates lacked. (Dkt. #10-1 at 5–6 ¶¶ 10–11); (Dkt. #10-2 at 5–6 ¶¶ 10–11); (Dkt. #10-3 at 5–6 ¶¶ 10–11). The City thus proffers multiple non-discriminatory

---

[2] The Committee members also noted Coleman's certifications, which include Euthanasia Certification, Basic Animal Control Officer Certification, Advanced Animal Control Officer Certification, Rabies Investigator Certification, Bite Stick/ ASP & Chemical Capture Certification, and Dangerous Dog Investigation Certification. (Dkt. #10-1 at 4–5 ¶ 9); (Dkt. #10-2 at 4–5 ¶ 9); (Dkt. #10-3 at 4–5 ¶ 9); (Dkt. #10-3 at 136).

9

bases for choosing Coleman for the Animal Services Department Manager role rather than Fuhr or any of the other candidates. This comfortably satisfies the City's burden.

### ii. Fuhr's Burden of Establishing Pretext

Accordingly, the burden shifts back to Fuhr to establish that the City's purported reason for choosing Coleman over Fuhr for the Animal Services Department Manager role was merely pretext for its racial motivations, or that race was another "motivating factor" in the City's selection. *Autry*, 704 F.3d at 347. Fuhr fails to do so. "In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case, a plaintiff must produce 'substantial evidence of pretext.'" *Haywood v. Miss. Dep't of Corr.*, 716 F.App'x 316, 319–20 (5th Cir. 2018) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001)). In assessing pretextual arguments, courts should not "engage in second-guessing . . . an employer's business decisions." *LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

In his response to the City's motion for summary judgment, Fuhr points to seven pieces of evidence to support his position that the City's stated non-discriminatory reasons for not promoting Fuhr are pretextual—(1) Coleman's youth; (2) Coleman's status as an outsider candidate, whereas Fuhr would have been an internal hire; (3) Matt Harmon's promotion to a different mid-level position even though Fuhr scored higher than Harmon in consideration for the Animal Services Department Manager role; (4) the Committee's alleged discounting of Fuhr's presentation of his vision for the role; (5) the City's motive to hire a black candidate due to previous Title VII litigation against the City; (6) Terrence Steele's (the

Assistant City Manager) statement to Coleman that he was the first African American to hold this director-level position with the City; and (7) the City's efforts to terminate and not promote Fuhr after he did not get the Animal Services Department Manager position (which Fuhr contends intensified after Fuhr filed an internal discrimination complaint). (Dkt. #16 at 7–11). The Court will address each piece of evidence in turn.

### a. Coleman's youth and outsider status

It is undisputed that Coleman was 22 years old and not employed by the City at the time he applied for the Animal Services Department Manager role. (Dkt. #16-2 at 2 ¶ 2); (Dkt. #10-1 at 2 ¶ 6); (Dkt. #10-2 at 2 ¶ 6); (Dkt. #10-3 at 2 ¶ 6). Both facts, however, are irrelevant in evaluating potential pretext in a race-discrimination case. While someone's youth could be evidence of pretext in an age-discrimination claim in which a plaintiff alleges, for example, that an employer discriminated against older candidates, Fuhr points to no authority, and this Court is unaware of any authority, supporting the proposition that *age* can be used to show pretext for *racial* motivations. *Cf. Mitchell v. Univ. of La. Sys.*, 154 F.Supp.3d 364, 391 (M.D. La. 2015) (finding plaintiff, a 55-year-old black female, established pretext in her age-discrimination failure-to-promote claim where the employer told her that he wanted "younger folks" for the role and ultimately hired a 27-year-old white male). Similarly, Fuhr provides no support for his position that a candidate's outsider status can be used to show pretext for race.

If Fuhr is instead using Coleman's age and outsider status as a proxy to argue that pretext is evident because Coleman was less qualified than Fuhr for the job,

11

(Dkt. #16 at 7), this argument similarly fails. "[T]o establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (quotations omitted); *see also E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A fact finder can infer pretext if it finds that the employee was "clearly better qualified" (as opposed to merely better or as qualified) than the employees who are selected."). Fuhr has not met this high standard of establishing that he was "vastly" more qualified for the job than Coleman. Indeed, there is ample evidence in the record that Coleman, despite his youth, had extensive experience supervising animal service officers—and potentially more managerial experience than Fuhr. *See supra* III(B)(i). Further, the Committee could have viewed Coleman's outsider status as an asset, rather than a pitfall, due to his ability to bring fresh perspectives and new ideas to the role. The Court will not question those "business decisions" that are clearly within the City's prerogative. *LeMaire*, 480 F.3d at 391. Accordingly, Coleman's age and outsider status are not pretext for racial discrimination against Fuhr.

### b. Matt Harmon's promotion to a different role

Next, Fuhr argues that he has established pretext based on the City's promotion of Matt Harmon, another white internal candidate, to a mid-level role, even though Harmon scored lower than Fuhr in the Animal Services Department Manager evaluation (Fuhr received 82 points, while Harmon received 65 points). Fuhr contends that this "clearly" shows that "the committee was not relying on the

numbers to appoint its new director and mid-level supervisor." (Dkt. #16 at 8) ("However, they then promoted Harmon to the mid-level supervisor vacancy over Plaintiff and Ulch **even though Plaintiff and Ulch each scored 16 points higher than Harmon on the committee's evaluations!**") (bolding in original). This argument is also meritless.

At the outset, Fuhr fails to cite any evidence in the record showing that Harmon was indeed promoted to a mid-level role. On this basis alone, the argument fails. *See* Local Rule CV-56(b) ("The responsive brief [to a summary-judgment motion] should be supported by appropriate citations to proper summary judgment evidence."). However, even assuming arguendo that Fuhr had cited admissible evidence indicating Harmon's promotion, the City's decision to promote Harmon to a *different* position, not at issue in this lawsuit, has no relevance to whether Fuhr was discriminated against based on his race in consideration for the Animal Services Department Manager role. Indeed, the scores that Fuhr, Harmon, and the other candidates received from the Committee regarding their candidacy for the Animal Services Department Manager role may well have had no impact on the City's consideration of who to hire for a different role with different job responsibilities. Again, the Court can only speculate as Fuhr provides no evidence concerning Harmon's supposed promotion and the nature of that role.

Furthermore, if indeed Harmon was promoted, this fact would undermine, rather than support, Fuhr's argument that the City discriminates against white employees based on race. Instead, Harmon's promotion would show that the City

13

promotes white employees, such as Harmon, and makes it more likely, rather than less likely, that the decision not to promote Fuhr to the Animal Services Department Manager position was not based on his race.

### c. Fuhr's vision for the role

Similarly, Fuhr's argument that the Committee discounted Fuhr's presentation of his vision for the role does not establish pretext. Fuhr contends that "the committee appeared disinterested" in hearing about his "new programs and ideas . . . for modernizing the department and transforming the animal shelter into a no-kill shelter" during his interview. (Dkt. #16 at 8). Fuhr documented his ideas in a "List of Possible Programs, Thoughts, Ideas and Areas of Improvement for the Sherman Animal Shelter," which he submitted to the Committee for their consideration. (Dkt. #10-1 at 11–17).

But there is no evidence in the record that the Committee ignored or disregarded these ideas. Rather, Fuhr presents only his subjective impressions of how the Committee perceived his proposals and asks this Court to accept his perceptions as evidence of pretext. Such subjective impressions about how the Committee perceived him, which amount to pure speculation, cannot be the basis for establishing pretext. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice."); *see also Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (quoting *La. Office of Cmty. Servs.*, 47 F.3d at 1443–44) ("This court has consistently held that

an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."). Accordingly, this argument also fails.

### d. City's motivation to discriminate

Fuhr next argues that a prior lawsuit against the City in which a black employee asserted a Title VII failure-to-promote claim[3] creates "a strong motive [for the City] to give preferential treatment to minority job applicants for upper management positions—like the 22-year-old Coleman." (Dkt. #16 at 8–9). This argument fails because it also rests entirely on speculation, which the Court cannot consider in evaluating pretext. *Nichols*, 81 F.3d at 42. Notably, Fuhr fails to tie the previous litigation—which resulted in an unknown settlement—to the City's hiring decision for the Animal Services Department Manager position. *See Kirksey v. City of Sherman*, Case No. 4:17-CV-794-RAS (E.D. Tex. 2017) (Dkt. #24) (dismissing case with prejudice due to settlement by the parties). And Fuhr cites no authority standing for the proposition that prior employment discrimination litigation that resulted in a settlement with unknown terms can establish pretext in a later discrimination suit by a different plaintiff and involving differing circumstances. Thus, this evidence also fails to establish pretext.

### e. Assistant City Manager's comment that Coleman is the first African American to hold the Animal Services Department Manager position

Fuhr next contends that the Assistant City Manager Terrence Steele's statement to Coleman, after he began as Animal Services Department Manager, that

---

[3] *Kirksey v. City of Sherman*, Case No. 4:17-CV-794-RAS (E.D. Tex. 2017).

15

he was the first African American to hold this director-level position with the City, is evidence of pretext. Again, however, Fuhr cites no authority supporting this assertion, namely that a jury can infer racially discriminatory intent based on a superior telling a newly hired employee that he is the first of his minority to hold the position. The omission is unremarkable because inferring such intent would improperly equate an employer's recognition of milestones regarding diversity in an organization's leadership with racial discrimination. There is no basis in law for such an inference.

The only precedent Fuhr cites in support of his argument regarding Steele's comment is a Fifth Circuit decision that sets forth a two-pronged test for determining when an employer's "discriminatory remarks" can be used as evidence to establish the fourth prong of a prima facie age-discrimination case—namely that the plaintiff was "otherwise discharged because of his age." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015). The *Goudeau* court requires that the comments show: "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* at 475–76 (quotations omitted). But the *Goudeau* test does not apply here.

First, the *Goudeau* test applies to establishing a prima facie case of discrimination, not in evaluating pretext. *Id.* at 475. Second, even if relevant to the pretext inquiry, Fuhr fails to explain why a test applied in the context of age-discrimination claims should also be applied in this race-discrimination case. In this

16

regard, the Court notes that the cases cited by the *Goudeau* court concerning the two-pronged test on prima facie evidence are also age-discrimination cases. *See Goudeau*, 793 F.3d at 475–76 (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015) (age-discrimination case); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (same)). Third, Fuhr fails to articulate how a framework used to analyze statements in a discriminatory discharge claim could be applied in a discriminatory failure-to-promote case such as this one. However, even if the *Goudeau* test is applied to the comments made by Steele, Fuhr still fails to establish that Steele exhibited any discriminatory animus against white employees when he merely told Fuhr that he was the first African American to hold the position. In short, Fuhr cannot establish pretext based on this statement.

### f. Instruction to find a way to not promote and terminate Fuhr

Fuhr's final pretext argument relies on a statement made by Assistant City Managers Steve Ayers and Terrence Steele to Coleman, after he became Animal Services Department Manager, in which they instructed Coleman to find a reason to discredit and terminate Fuhr. Fuhr alleges that the City's desire to have him removed "intensified after [he] made his internal complaint of race discrimination." (Dkt. #16 at 9). The following statement in Ty Coleman's declaration corroborates that Ayers and Steele sought to have Fuhr's employment with the City terminated:

> When I was first hired, I had a meeting with Steve Ayers and Terrence Steele, the assistant city managers. They were my direct supervisors. They told me that Ben Fuhr was a problem and instructed me to document "every little thing" I could to project Ben in a negative light and to look for reasons to terminate Ben's employment with the City of Sherman. They told me that Ben was unhappy about not getting the position and had complained. They told me that Ben was on a "do not promote" list.

17

(Dkt. #16-2 ¶ 5). The record also reflects that, on July 31, 2019, Fuhr filed an internal complaint with the City in which he alleged racial discrimination for not being promoted to the Animal Services Department Manager role. (Dkt. #16-1 at 12–14). However, Fuhr provides no evidence that Ayers's and Steele's desire to have Fuhr removed or placed on a do not promote list "intensified" after Fuhr filed his internal discrimination complaint.

At the outset, Fuhr's presence on a "removal" or "do not promote" list is not evidence that the City's hiring process for the Animal Services Department Manager was racially motivated. Instead, it is indicative of how the City leadership viewed Fuhr individually. In this regard, nothing in Ayers's and Steele's statement references Fuhr's race. And while the statement might be relevant in a wrongful termination or retaliation claim, it is not probative of pretext in this failure-to-promote case.

In support of his argument that this evidence establishes pretext, Fuhr cites *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015), for the proposition that a "sudden unprecedented disciplinary campaign[] against an employee can raise an inference of discriminatory intent." (Dkt. #16 at 9); *see also Burton*, 798 F.3d at 236 ("Evidence of a sudden and unprecedented campaign to document [the plaintiff's] deficiencies and thus justify a decision that had already been made, however, could raise an inference of pretext."). But *Burton* is an Americans with Disabilities Act discriminatory termination case, not a Title VII failure-to-promote action. Fuhr provides no explanation for why *Burton* applies here.

Even if applicable in a Title VII failure-to-promote claim, *Burton* stands for the straightforward proposition that an employer cannot make post hoc rationalizations to support its prior employment decision—and such evidence can be used by a plaintiff to establish pretext. *Burton*, 798 F.3d at 236. Here, however, there is no evidence that the City, after choosing Coleman for the Animal Services Department Manager role, manufactured reasons post-hoc for making that hiring decision. Rather, the Committee's evaluation of the candidates, which was then used to determine who to hire, occurred contemporaneously with the interview process. Thus, even if applicable, *Burton* cannot be a vehicle for Fuhr to establish pretext based on Ayers's and Steele's statement. Accordingly, this piece of evidence—as with all the others Fuhr presents—also fails to establish pretext.

* * *

Because the City of Sherman has presented a number of non-discriminatory reasons for hiring Coleman rather than Fuhr, and Fuhr fails to rebut that evidence by establishing pretext, summary judgment for the City is warranted.

## IV. Conclusion

For the foregoing reasons, Defendant City of Sherman, Texas's Motion for Summary Judgment, (Dkt. #10), is **GRANTED**. Benjamin Robert Fuhr's final remaining claim under Title VII of the Civil Rights Act, (Dkt. #1 ¶¶ 13–21), is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendant's Motion in Limine, (Dkt. #19), and Plaintiff's Motion in Limine, (Dkt. #21), are **DENIED as moot**.

The Court will enter a final judgment by separate order.

**So ORDERED and SIGNED this 3rd day of February, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE